THOMAS O. SANSBURY and ANDREW W. BROWN and
MARY E. his Wife *vs.* JAMES B. BELT and THOMAS
E. WILLIAMS, trading as BELT & WILLIAMS.

*Lien of Judgments on Land Sold by Trustees under a Decree
to enforce an alleged Equitable Lien against the Judgment
Debtor and others Interested, for Attorneys' Fees—After satis-
faction of such Lien, the Share distributed from the balance
of the Proceeds to the Children of the Judgment Debtor, not
Liable for the Payment of the Judgments—Chancery Sales.*

S., the mother of the appellants, died during the progress of an
action of ejectment to recover certain lands in which she was one-
fourth interested. The lands, so far as her share and two others were
concerned, were recovered in 1872. After the recovery, the surviv-
ing attorneys and the representatives of those who had died, who
had gained the suit, filed a bill (to which the appellants with others
were made defendants) for the sale of the land to satisfy the amount
agreed on for their professional services, setting up a specific equit-
able lien on the land under a written agreement with the plaintiffs
in the ejectment suit, but which agreement made after S's death,
the appellants, then infants, had not signed. It appeared that the
defendants had no personal estate. A decree was passed in October,
1875, for the sale of the land for the payment of the attorneys' claims,
upon the assumption, the lien had been established by the proof in
the cause, and the land was sold by trustees, and of the proceeds,
after paying costs, commissions, expenses and the attorneys' claims,
a balance remained for distribution to the several defendants. A
petition was then filed by the appellees setting up judgments they
had recovered in September, 1864, (before the alleged equitable
lien in favor of the attorneys was created,) against S., and asking
that they be paid out of the amount to be awarded to her children,
the appellants. Proof showed that S. left no personal estate. In
the auditor's account the amount coming to the appellants was
applied to the payment of these judgments, leaving a small balance
still due thereon. On exceptions to this account, it was HELD:

1st. That it would be inequitable and unjust to take the fund from the
children, and apply it to the judgment debts of their mother.

2nd. That the judgment liens upon S's interest in the land were out-standing elder encumbrances, of which the purchasers were bound to take notice.

3rd. That no appeal having been taken from the decree of October, 1875, it was neither affirmed nor approved but stood as the law of the case.

Chancery sales, unless expressly stipulated to the contrary by the terms of sale, are made subject to the encumbrances on the property.

APPEAL from the Circuit Court for Prince George's County, in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., GRASON, MILLER, ALVEY, ROBINSON and IRVING, J.

*R. B. R. Chew* and *William H. Tuck,* for the appellants.

It is insisted that the order of the Court below ratifying the account allowing the appellee's claims should be re-versed, for the following reasons:

1. The judgments were over three years' standing when filed, and presumed in law to be satisfied, no *scire facias* having ever issued, and *fiats* been obtained to revive the same, which was rendered necessary, as well by the death of Mary E. Sansbury, the original defendant, as by the lapse of time. In such a condition, in a case like the present, instituted for the enforcement of a specific lien as to some of the defendants, and where there was no lien at all as against the appellants, the judgment creditors of Mary E. Sansbury are not to be paid out of the fund to be distributed. *Hodges vs. Sevier,* 4 *Md. Ch. Decis.,* 382, 385; *Warfield vs. Brewer, et al.,* 4 *Gill,* 265, 268, 269; *Alex. Br. St.,* 146, 168.

The principle of the above decisions remains unchanged, so far as this case is concerned, by the Acts of 1862, ch. 262, and 1874, ch. 320.

2. Mary E. Sansbury, the mother of Thomas O. Sansbury and Mary E. Brown, was never in possession of the land or any part thereof, but it was held adversely against her while she lived, and until after the recovery by her said children and the other plaintiffs in the ejectment suit, and the title to the said land vested in *them* as the *heirs-at-law* of David Crawford, and she never had such a seizin or *estate in possession* in said lands as was liable to be sold upon a creditors' bill, under the Act of 1875, ch. 72, sec. 5, or the Code, Art. 16, sec. 126.  4 *Kent's Com.*, 404, 407, *top paging*; 2 *Peters*, 625; 13 *Md.*, 16; 6 *H. & J.*, 156; 6 *H. & J.*, 258.

Nor such an estate or interest in the said lands as was subject to partition between her and the others claiming, and finally determined to be the heirs-at-law of David Crawford, and as such heirs entitled to the land.  Until their title to the land was established there could be no partition.  *Campbell vs. Lewis,* 9 *Md.*, 500, 511; *Boone vs. Boone,* 3 *Md. Ch.*, 497 ; 4 *Kent*, 381, *top paging, note c.*

3.  But, upon the theory that the land was the property of Mary E. Sansbury, against whom the appellees recovered their judgments, they are not entitled to recover.  The bill in this case is not a creditors' bill.  It is in the nature of a bill for a specific performance by the parties to the contract for payment of legal services in recovering the land.

If the judgments were legal liens on the land recovered by the appellants, and set apart to them in severalty before the decree in this case was passed, capable of being enforced against the said land, the purchasers took the land *cum onere*.  The doctrine *caveat emptor* applies to them, and the appellees must look to the land, and not to the fund.  23 *Md.*, 9; 39 *Md.*, 232; *Duvall vs. Speed*, 1 *Md. Ch.*, 229, 231, 232, 234, 235 ; *Glenn vs. Clapp*, 11 *G. & J.*, 10 ; *Brooke vs. Brooke, et al.*, 12 *G. & J.*, 306; *Bell vs. Brown's Adm'r*, 3 *H. & J.*, 484; *Ellicott vs. Ellicott*, 6

*G. & J.,* 35 ; 4 *G. & J.,* 492 ; *Farmers' and Planters' Bank vs. Martin & Travers,* 7 *Md.,* 344.

4. Upon the death of Mary E. Sansbury, mother of the appellants, Thos. O. and Mary E., her title or interest in the land, (if not extinguished by that event, as insisted under the appellants' second point,) devolved on her children, and the remedy of the petitioners in respect to their said judgments against her, was at law, and not in equity, against her administrators if she left personal estate, and if none, by *scire facias* against the terre-tenants of the land. It is submitted that *scire facias* and *fiats* against the occupants of the land, prior to the recovery in the ejectment suit, would not have affected the title or interest acquired by the appellants at the death of their mother, as *heirs* of David Crawford, and finally established by their recovery in the ejectment suit. But the recovery was within twelve years from the death of their mother and the date of their judgments, and if, as insisted by the appellees, their judgments were legal liens against the land so recovered by the appellants, they had a plain legal remedy to enforce the payment thereof, by reviving the same against them as her heirs-at-law, and terre-tenants of the land, or against the purchasers of the land under the decree in this case. *Code, Art.* 75, *sec.* 40.

5. The proceedings distinctly show that the portion of the land recovered by Thomas O. Sansbury and Mary E. Sansbury, and which, after the bill was filed, but before final decree, was assigned to them in severalty, was treated as their land, and the complainants' claims, as founded on services rendered to them, in respect of which they claimed payment, and payment was accordingly decreed. Consequently, all suggestions or arguments based on the idea that the surplus proceeds of sale are to be treated as belonging to Mrs. Sansbury, and that the principles of equity practice, which, under a different state of circumstances, allow creditors of a deceased debtor to come against such

a fund, are erroneous and inapplicable to this case. There is no element of fact in the record by which the case can be assimilated to a case of land sold for partition amongst the heirs-at-law, in which the creditors of the deceased ancestor, in case of a deficiency of personal estate, may set up their claims and have them allowed out of the fund prior to its distribution amongst the heirs-at-law.

The appellees have not shown that they were remediless at law, or that they have any lien or title to the fund, which it is the duty of Courts of equity to enforce. *Clagett vs. Worthington,* 3 *Gill,* 95, 96 ; *Hammond vs. Hammond,* 2 *Bl.,* 245 ; *David vs. Graham,* 2 *H. & G.,* 94 ; *Farmers' Bank vs. Thomas,* 37 *Md.,* 246.

*C. C. Magruder,* for the appellees.

Why should a Court of equity, in a case like this, having jurisdiction of the whole case and control of the fund, compel a creditor to resort to another tribunal to secure his rights ? Ought it not rather to prevent circuity of action and multiplicity of suits, (which the law abhors,) delay and expense, dispose of the whole case and the rights of all parties concerned ? The authorities, it is insisted, are conclusive on this point. 1 *Story's Commts.,* secs. 455 *and* 457 ; *sec.* 64, *p.* 81; *Collinson and Owens,* 1 *Md. Ch. Dec.,* 420, 6 *G. & J.,* 4.

It is submitted, from the facts in this case and the authorities referred to, that it would be inequitable and unjust to allow these exceptants, heirs-at-law of their deceased mother, to receive the fund in controversy to the prejudice of her judgment creditors. The land recovered in the ejectment case descended to them, encumbered with these judgment liens ; they inherited the land, *cum onere,* and it would certainly be doing great injustice to these judgment creditors, if they fail in their application to have the said fund applied to the payment of their debts.

The appellees referred to the following authorities: *Pearson vs. Berry,* 1 *Gill,* 234 ; *Doub vs. Barnes,* 4 *Gill,* 1 ;

*Ellicott vs. Nichols,* 7 *Gill,* 85 ; *Booth vs. Campbell,* 15 *Md.,* 569 ; *Coombs vs. Jordan,* 3 *Bl.,* 326 ; *Hannon vs. Hannon,* 2 *Bl.,* 350 ; *Dorsey vs. Hammond,* 1 *Bl.,* 463 ; *Alex. Pr.,* 128, 129.

MILLER, J., delivered the opinion of the Court.

In September, 1864, the appellees recovered two judgments against Mary E. Sansbury, the mother of the appellants, and the sole question presented by this appeal is whether the Court below was right in directing these judgments to be paid out of the proceeds of the real estate sold under the decree in this cause.

It appears that George T. Crawford, Mrs. Sansbury, Mrs. Wall and Mrs. Hill, who claimed to be the nephew and nieces of David Crawford, deceased, brought an action of ejectment (the husbands of the married women uniting in the suit) to recover certain lands in Prince George's county, of which the said David died seized and possessed. This litigation, which was commenced in 1860, was warmly contested, and continued until 1872. The case was removed from the State Court to the Circuit Court of the United States, and the result, after two appeals to the Supreme Court, was a recovery, in November, 1872, by the plaintiffs of three undivided fourths of the land. During the progress of the cause Mrs. Sansbury and her husband died, and the appellants, as her heirs-at-law, were made plaintiffs in her stead. Mrs. Wall also died pending the proceedings, and her surviving husband and infant children were made plaintiffs in her place. George T. Crawford likewise died, but his children were not made parties, and hence the recovery was only for three-fourths of the land.

Before the suit was instituted all the plaintiffs made written agreements with their attorneys to pay them a contingent fee in money in case of success. But subsequently, in 1870, after the death of Mrs. Sansbury, Mrs.

Wall and Mrs. Hill, with their husbands, entered into another agreement, by which they agreed to give their attorneys a sum of money equal to half the value of the property and *mesne* profits to be recovered, and further agreed to give them " *a lien* on said property and *mesne* profits thereof, to secure their retainer, and not to assign the same without their written assent, and to execute such assurances as may be necessary to render *said lien* effective ; and it is further understood that this agreement is in place and stead of any other agreement made by us to pay the above-named attorneys." The appellants did not sign this agreement, and were at the time infants under twenty-one years of age.

Immediately after the recovery in ejectment, the surviving attorneys and the representatives of those who were dead, filed the bill in this cause, for a sale of the land re-. covered, to pay the amount thus agreed upon for their professional services. To this bill Mrs. Hill and her husband, the surviving husband of Mrs. Wall and her children, and the appellants, children of Mrs. Sansbury, were made defendants. The bill sets out the agreement of 1870 made by Mrs. Wall and Mrs. Hill and their husbands, and avers that the appellants, being minors at the time, were unable to enter into a contract, but, as they recovered one-fourth of the land, and were as much benefited as the other parties by the services of these attorneys in this long and tedious litigation, they ought to be required to pay the same proportion in respect to the recovery in their favor as the other parties agreed to pay under their agreement. It then charges that all the parties in whose favor this real estate has been recovered by the services of these attorneys, are possessed of no personal estate, and are entirely without means of paying the amount thus due except by a sale of the land so recovered, and that the complainants are entitled to enforce payment of this amount as *a lien* upon the land by a sale of the same.

The prayer of the bill is that the three undivided fourths of the land may be sold for the payment of the amount thus due the complainants, and for general relief.

After answers and proof, a decree was passed in October, 1875, ordering the whole real estate to be sold "for the payment of the claims of the complainants," and appointing trustees to make the same. The sales were duly made, reported and ratified, and the proceeds brought into Court for distribution. After paying costs, commissions, expenses, and the claims of the complainants, a balance remained for distribution to the several defendants. At this stage of the case, a *petition* was filed by the appellees, setting forth the judgments they had recovered against Mrs. Sansbury, in 1864, and asking that they be paid out of the amount to be awarded to her children, the appellants. This application was answered and resisted by the children, and proof was taken showing that Mrs. Sansbury left no personal estate. The auditor then stated an account, in which the amount coming to the appellants was applied to the payment of these judgments, leaving a small balance still due thereon. To this account exceptions were filed, but the Court ratified the same, and hence this appeal from the order of ratification.

We are not aware of any equitable principle, or of any rule of equity practice that will justify this order. The land was not sold on a bill for *partition* among heirs, where creditors of the deceased may come in and participate in the fund, upon showing insufficiency of the personal estate, nor was it sold under a creditors' bill or a bill in the nature of a creditors' bill. The general creditors of Mrs. Sansbury were not called in, nor were the appellees as judgment creditors made parties to the bill, nor was it necessary for the purpose in view, or the relief prayed to make them parties. The bill sets up a specific equitable lien on the land recovered in the ejectment suit in favor of the attorneys who prosecuted that action to a

successful termination. The decree proceeds ·upon the assumption that this lien had been established by the proof, and it can be sustained upon no other theory. But this equitable lien, if it existed, was created long after the lien of these judgments upon Mrs. Sansbury's interest in the land. These judgment liens were outstanding elder encumbrances of which the purchasers were bound to take notice, and of which it is presumed they had knowledge at the time. It is well settled law in this ˙ State, that chancery sales, unless expressly stipulated to the contrary by ·the terms of sale, are made subject to encumbrances on the property. As a general rule, the only thing sold is the interest and estate of the parties·to the proceeding, and the doctrine of *caveat emptor* applies. *Farmers' & Planters' Bank vs. Martin & Travers,* 7 *Md.,* 342 ; *Slothower vs. Gordon,* 23 *Md.,* 1 ; *Duvall vs. Speed,* 1 *Md. Ch. Dec.,* 229. There is no pretence that the trustees made any representations at the sale, that the property would be sold free of encumbrances, or that the appellees were present, and requested or assented that it should be so sold. The purchasers are not here making complaint, or asking the proceeds to be applied to these judgments for their relief. For aught that appears in this record, they are content to take the land charged with the judgment liens, and are presumed to have made their bids, and bought for so much less on that account. Moreover, the appellees could have subjected the lands in the hands of the purchasers to the payment of their judgments. The mode of procedure to accomplish that result was obvious and simple. In this state of case, we think it would be inequitable and unjust to take this fund from the children, and apply it to the judgment debts of their mother. It follows that the order appealed from must be reversed, and the cause remanded to the end that the account which distributes the fund to the appellants may be ratified.

In thus disposing of this appeal, it must be observed that we neither affirm nor approve the original decree of October, 1875.   That decree is not before us for review. No appeal has been taken from it, and it stands as the law of the case.

*Order reversed, and*

(Decided 12th March, 1880.)          *cause remanded.*